UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────

№ 14-CV-2889 (JFB)(AKT)

─────────────────

ROBERT GREGORY,

Plaintiff,

VERSUS

INCORPORATED VILLAGE OF CENTRE ISLAND; BOARD OF ZONING APPEALS OF THE INCORPORATED VILLAGE OF CENTRE ISLAND; LAWRENCE SCHMIDLAPP, INDIVIDUALLY AND AS DEPUTY MAYOR OF THE INCORPORATED VILLAGE OF CENTRE ISLAND; LAURA SWEENEY CHUBA, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF CENTRE ISLAND; AND THE BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF CENTRE ISLAND,

Defendants.

─────────────

**MEMORANDUM AND ORDER**
August 28, 2015

─────────────

JOSEPH F. BIANCO, District Judge:

This action arises from plaintiff Robert Gregory's efforts to build upon his property, which is governed by a restrictive covenant that protects his neighbors' views of Oyster Bay. Plaintiff brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York law against the Incorporated Village of Centre Island ("the Village"), the Village's Board of Zoning Appeals, Deputy Mayor Lawrence Schmidlapp, the Village's Board of Trustees (collectively, "the Village defendants"), and Laura Sweeney Chuba ("Sweeney"), plaintiff's neighbor and a member of the Village's Board of Trustees. The gravamen of plaintiff's complaint is that the defendants have purposefully frustrated his efforts to seek zoning variances and building permits.

Presently before the Court are separate motions to dismiss filed by Ms. Sweeney and the Village defendants. For the reasons set forth below, the Court grants the motion and dismisses the case. In brief, the federal claims are dismissed because most of plaintiff's claims are time-barred, and the remaining claims do not state a plausible claim. Furthermore, given the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims at this juncture, and dismisses them without prejudice.

1

However, in an abundance of caution, the Court will allow plaintiff the opportunity to amend his complaint to attempt to address the pleading defects identified by the Court.

## I. BACKGROUND

The following facts are taken from the complaint, and are not findings of fact by the Court. Instead, the Court will assume these facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

This action arises from plaintiff's efforts to obtain building permits for an expansion of his home in Oyster Bay, New York. The property was originally owned by John and Kathleen Comack ("the Comacks"). (Compl. ¶ 41.) In 1999, the Comacks sought a zoning variance from the Village, which they obtained in exchange for consenting to a restrictive covenant on the land designed to preserve the neighborhood's waterfront views. (*Id.* ¶ 43.) Under the terms of the covenant, the owners of the parcel were required, among other things, to ensure that "all open views from points off the premises to Oyster Bay shall remain in their present unobstructed state." (*Id.* ¶ 44.) A year later, the Comacks planted two trees on the property, and the Village filed an action in Nassau County Supreme Court in 2003, alleging that the Comacks had violated the terms of the covenant. (*Id.* ¶ 45-47.) The court ruled in favor of the Comacks. (*Id.* at ¶ 48.) In November 2006, plaintiff and his wife purchased the property from the Comacks. (*Id.* ¶ 51.) The Village subsequently appealed the ruling, which was reversed by the Appellate Division, Second Department. *See Inc. Vill. of Centre Island v. Comack*, 39 A.D.3d 712 (2d Dep't 2007.) Upon remand, the Village settled with the Comacks for a sum of money, and did not request that plaintiff remove any plantings on the property. (*Id.* at ¶ 54-58.)

In December 2006, plaintiff encountered the Village Mayor and Deputy Mayor at a Christmas party, and discussed the property. (*Id.* ¶ 59.) Plaintiff alleges that the Mayor and Deputy Mayor requested that plaintiff pay the Village $15,000 towards its litigations costs for the dispute with the Comacks. Plaintiff, in turn, discussed his intention to seek a zoning variance in order to build upon the property. Although plaintiff was initially receptive to the Mayor's request, plaintiff ultimately declined to pay the Village's litigation costs. (*Id.* at ¶ 59-63.)

Plaintiff submitted a request for a zoning variance in 2009 to the Village's Building Committee. (*Id.* ¶ 68.) The committee, which consists of the Mayor and the Board of Trustees, denied the application. (*Id.* ¶ 68-70.) Plaintiff appealed that determination to the Zoning Board of Appeals, which held hearings on the matter. Plaintiff's neighbor, Ms. Sweeney, objected to the application, along with other members of the community, on the grounds that plaintiff was seeking to expand his dwelling closer to the property line. (*Id.* ¶ 72.) At the close of the hearing, the committee requested that plaintiff submit a survey regarding the plantings on the property and their compliance with the restrictive covenant. (*Id.* ¶ 78.) Plaintiff submitted the survey in the spring of 2010.

In April 2010, while plaintiff's application was still pending, the Village passed a moratorium on building and variance applications in plaintiff's district until new regulations limiting building sizes were passed. (*Id.* ¶ 80.) In September 2010, the Village passed laws limiting the amount of building within plaintiff's zoning district; plaintiff asserts that he never received notice

or an opportunity to be heard about the new regulations. (*Id.* ¶ 88-107.)

After subsequent hearings and meetings with the Village, plaintiff drafted a new plan for proposed construction, and met with Ms. Sweeney in the hopes of obtaining her support for the proposal. (*Id.* ¶ 112.) Ms. Sweeney requested fifteen feet of plaintiff's beach front property in exchange for her support. (*Id.* ¶ 113.) Plaintiff declined the offer. The Village held a final hearing on the matter in August 2011, and the Zoning Board denied the application in October 2011. (*Id.* ¶ 117-19.) The Board's decision was largely based on the new zoning restrictions, and plaintiff asserts that the restrictions were "adopted to specifically target Plaintiffs' application." (*Id.* ¶ 123.)

In October 2011, plaintiff was charged with violations of the Village Code for moving trees on his property. (*Id.* ¶ 127.) Plaintiff was found guilty of the violation.[1] (Verdict, Def. Exhibit O, ECF No. 18-1.)

In the fall of 2012, plaintiff submitted a new application for a variance, in order to expand the property to house plaintiff's mother, who was ill. (*Id.* ¶ 128.) Plaintiff abandoned the application for a variance, and submitted an "as of right" application for a building permit to the Architectural Review Board, under the theory that the proposal complied with Village laws, and thus a variance was unnecessary. (*Id.* ¶ 131-32.) The Village's attorney told plaintiff that (according to the Village) the restrictive covenant on the property prohibited building on the property, and that, therefore, the committee would not review the building application or calendar the application for a hearing. (*Id.* ¶ 146-49.)

Robert Gregory and his wife, Maura Noordhoorn, commenced this action by filing a summons in Nassau County Supreme Court on April 16, 2014. Defendants removed this action on May 7, 2014, and the complaint was filed in this action on June 23, 2014. The complaint asserts that Ms. Sweeney has unduly influenced the Village's officials to purposefully delay hearings and ultimately deny plaintiff's building applications. (*Id.* ¶ 198.) Accordingly, plaintiff alleges that the defendants denied him due process, deprived him of the right to equal protection, infringed upon his right to free speech, and conspired to violate his constitutional rights. Plaintiff also asserts claims under New York law.

Defendants filed a motion to dismiss on September 29, 2014. After the motion was filed, plaintiffs' attorney moved to withdraw as counsel, and the Court granted the motion on January 9, 2015. Shortly thereafter, Ms. Noordhoorn withdrew her claims, and the Court dismissed her from this action on April 2, 2015. Mr. Gregory, now proceeding *pro se* in this action as the sole plaintiff, filed his opposition to the motion on June 11, 2015. Defendants filed separate reply memoranda on July 31, 2015.

This matter is fully submitted, and the Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518,

---

[1] Although the complaint does not reference the outcome of the violation proceedings, the Court may take judicial notice of the fact of plaintiff's conviction, because it is matter of public record.

3

521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859(JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Ct. Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949; *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

III. DISCUSSION

Plaintiff brings four claims pursuant to 42 U.S.C. § 1983: (1) a procedural due process claim under the Fourteenth

Amendment; (2) a substantive due process claim under the Fourteenth Amendment; (3) an equal protection claim under the Fourteenth Amendment; and (4) a claim of retaliation under the First Amendment. Plaintiff also alleges that the defendants violated his constitutional rights as part of a conspiracy.

Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). For the reasons set forth below, the Court concludes that plaintiff has failed to state a cognizable claim under Section 1983 under any of the four constitutional theories he has asserted. Therefore, in the absence of any constitutional claim, plaintiff's claim that the defendants conspired to violate his constitutional rights fails as a matter of law. Having determined that plaintiff has failed to plead a federal cause of action, the Court declines to retain jurisdiction over plaintiff's claims under state law.

A. Federal Claims

1. Statute of Limitations

There exists no federal statute of limitations for Section 1983 claims**.** Instead, federal courts considering § 1983 claims apply the forum state's general or residual statute for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, Section 214 of the New York Civil Practice Law and Rules sets forth a three year statute of limitations for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute." N.Y. C.P.L.R. § 214(2). New York law also determines "whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). Federal law determines when such claims accrue, and the Second Circuit has held that accrual of a Section 1983 claim occurs when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980); *see also Pearl*, 296 F.3d at 80. Although the statute of limitations is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (citing, *inter alia*, *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).

Here, it is clear from the face of the complaint that plaintiff is barred from asserting claims arising from events before April 16, 2011. The summons and complaint in this action are dated April 16, 2014, and thus plaintiff's claims in this action are only timely insofar as they relate to events within three years of that date. Therefore, plaintiff may only pursue claims relating to the following events, which are within the three-year limitations period: the Zoning Board's October 2011 decision denying plaintiff's variance application, and plaintiff's pending "as-of-right" application (which the Village has indicated it will not approve).[2]

---

[2] It is not clear whether plaintiff seeks to challenge the criminal charges asserted against him for zoning

5

Plaintiff contends that all his claims are timely under a continuing violation theory, but the Court finds this argument unavailing. Under the continuing violation doctrine, a claim that challenges a "continuous practice and policy of discrimination" will not accrue until the last unlawful act in furtherance of the policy. *See Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). Generally speaking, the continuing violation doctrine applies to claims arising from a sequence of events, such that "a course of conduct can be said to produce a single unlawful practice." *J.S. v. Killian*, No. 11 Civ. 103 (NRB), 2015 U.S. Dist. LEXIS 95606, at *25 (S.D.N.Y. July 22, 2015). By contrast, the continuing violation doctrine does not apply to a claim (or series of claims) arising from discrete actions, even if those actions have long-lasting effects. *Id.* at *30*; *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (emphasizing the distinction between continuing violations and claims based upon discrete acts, which accrue on the date they occur), *Brevot v. N.Y. City Dep't of Educ.*, 299 F. App'x 19, 21 (2d Cir. 2008) (due process claims relating to teacher's placement on a list of ineligible hires were time-barred, even though plaintiff did not suffer an actual job loss based upon the list until six years later); *Van Wormer v. City of Rensselaer*, 293 F. App'x 783, 784 (2d Cir. 2008) ("That the effects of retaliation are continuing does not make the retaliatory act itself a continuing violation.").

In order to meet the requirements of the continuing violation doctrine, plaintiff argues that the Village's conduct constitutes an ongoing policy of discrimination towards him, because the Village has repeatedly denied his applications over a span of many years. The Court finds this argument unpersuasive, because each of the acts plaintiff is seeking to challenge in this suit are discrete actions that give rise to separate claims. Plaintiff's argument is that the Village has selectively enforced the covenant (and other land use laws) against him by taking specific actions with respect to his building applications. For example, plaintiff seeks to challenge the 2010 moratorium on building applications, and the September 2010 laws limiting the amount of building within plaintiff's zoning district. These are discrete actions, and claims arising from these actions accrued on the date they occurred. Finally, to the extent plaintiff is still experiencing harms flowing from the Village's previous actions, plaintiff still cannot avail himself of the continuing violation doctrine, because the Second Circuit has clearly stated that ongoing harms flowing from discrete events do not trigger the application of the continuing violation doctrine. *Brevot*, 299 F. App'x at 21; *Van Wormer*, 293 F. App'x at 783. Thus, plaintiff's untimely claims are not revived by the continuing violation doctrine.

Although not raised by plaintiff, the Court also has considered whether the doctrine of equitable tolling applies. With respect to equitable tolling in Section 1983 actions, it is well-settled that federal courts should borrow the forum state's tolling rules. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86, (1980)), *cert. denied*, 538 U.S. 922 (2003); *accord Keating v. Carey*, 706 F.2d 377, 381 (1983). As the Second Circuit has explained, New York courts have adopted the same

---

violations, which were filed in October 2011. In any event, the Court need not consider the timeliness of any claim relating to those charges, because plaintiff has not demonstrated that his conviction has been vacated, and thus he is barred from challenging the propriety of his prosecution. *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (citing *Swartz v. Isogna*, 704 F.3d 105, 111-12 (2d Cir. 2013)).

equitable tolling doctrine that exists under federal law. *Keating*, 706 F.2d at 382. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). Thus, the Second Circuit "has applied the doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum.'" *Johnson*, 86 F.3d at 12 (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). However, "[e]quitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled." *Johnson*, 86 F.3d at 12. For example, under the equitable tolling doctrine, "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Keating*, 706 F.2d at 382.

In the instant case, there is no basis to apply the doctrine of equitable tolling. Plaintiff was aware of the allegedly unconstitutional conduct at the time it occurred, and he has failed to provide to the Court any facts that could give rise to equitable tolling. Under these circumstances, the Court finds that plaintiff failed to act with reasonable diligence in pursuing his claims during the three-year period and, therefore, that there are no grounds for equitable tolling. *See, e.g., Nicolosi v. City of New York*, No. 04 Civ. 82 (DAB), 2006 U.S. Dist. LEXIS 84474, at *11 (S.D.N.Y. Nov. 20, 2006) (dismissing Section 1983 claims as time-barred and finding no basis for equitable tolling). As the Second Circuit has noted, "[t]hough plaintiffs might find the result harsh, the 'harshness . . . is largely a self-inflicted wound.'" *Johnson*, 86 F.3d at 13 (quotations and citations omitted).

In sum, plaintiff's constitutional claims that arise from the alleged acts of the defendants before April 16, 2011 are untimely. Accordingly, plaintiff's claims relating to events before the limitations period are dismissed. The balance of plaintiff's federal claims are timely, and the Court next considers defendants' arguments that these claims fail on the merits. The Court's analysis is confined to plaintiff's timely claims, which arise from two events: the Zoning Board's October 2011 decision denying plaintiff's variance application, and plaintiff's pending "as-of-right" application.

2. Due Process

Plaintiff claims defendants have violated his right to due process, because they have denied his variance application out of bias, and have refused to consider his current "as-of-right" application. Defendants argue that plaintiff has failed to state a claim under the due process clause, because (1) plaintiff has no cognizable property interest in the discretionary grant of a zoning variance, (2) the availability of process through an Article 78 petition provided plaintiff with all the process he was due, and (3) plaintiff's allegations about the denial of his zoning variance applications do not describe the type of shocking and outrageous conduct that is actionable as a substantive due process violation. For the following reasons, the Court agrees that plaintiff has failed to state a claim under the due process clause, under a procedural due process or a substantive due process theory.

A. Procedural Due Process

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342,*

*Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). To establish a procedural due process violation, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378, (1971). The Court assumes, for the purposes of this analysis, that plaintiff has a property interest in his request for building permits. Thus, the Court's analysis is confined to the question of whether he was afforded adequate process.

Here, plaintiff challenges the Village's denial of his building applications. However, plaintiff does not dispute that he could have challenged the Village's decisions in state court through a C.P.L.R. Article 78 proceeding. In cases addressing zoning applications, courts have held that the availability of review through an Article 78 petition provides constitutionally adequate process. *Riverhead Park Corp. v. Cardinale*, No. 07-CV-4133 (ADS), 2013 U.S. Dist. LEXIS 45498, at *33 (E.D.N.Y. Mar. 28, 2013) (citing *Nenninger v. Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013)); *Deperno v. Town of Verona*, No. 10-CV-450 (NAM), 2011 U.S. Dist. LEXIS 109405, at *21 (N.D.N.Y. Sept. 27, 2011) ("In this case, the availability of Article 78 administrative review of the ZBA's determination and procedural process under state law, including enactment of the zoning law, precludes a finding that the defendants' conduct violated plaintiff's rights of procedural due process."); *Orange Lake Assoc. v. Kirkpatrick*, 825 F. Supp. 1169, 1179 (S.D.N.Y. 1993) (holding that availability of Article 78 review barred claim that the passage of zoning amendments denied plaintiff due process).

This rule applies even when, as here, the plaintiff's claim is premised on the local government's failure to review the application. *Nenninger*, 509 F. App'x at 39 n.2 ("To the extent Nenninger argues that a failure to rule on his application—complete or incomplete—denied him procedural due process, the claim fails in any event because Nenninger was free to bring an Article 78 mandamus proceeding in New York State court.").

Further, unlike in cases where courts have denied motions to dismiss, plaintiff does not claim that an Article 78 proceeding would have been inadequate to challenge the denial of his variance application, or that he was denied the opportunity to challenge the applicability of the covenant to his "as-of-right" application by petitioning the Zoning Board. *See, e.g.*, *Koncelik v. Town of E. Hampton*, 781 F. Supp. 152, 158 (E.D.N.Y. 1991) (denying motion to dismiss procedural due process claim in zoning case despite availability of Article 78 procedure because "although plaintiffs timely and successfully availed themselves of the Article 78 proceeding (as to the Planning Board claim), their plans to develop their property are still being delayed by the ZBA's and the Planning Board's pending appeal"); *Acorn Ponds v. Vill. of N. Hills*, 623 F. Supp. 688, 690-91 (E.D.N.Y. 1985) (denying motion to dismiss procedural due process claim related to zoning decision, despite fact that plaintiff was able to obtain orders in Article 78 proceeding, because such remedies were inadequate given the delay in obtaining the certificates of occupancy). Here, plaintiff did not seek review in an Article 78 proceeding, and did not commence this action until several years after the Village first denied his building application. As a result, plaintiff cannot claim that an Article 78 proceeding would

have been inadequate process because it delayed review of his claims.[3]

In sum, plaintiff was provided with adequate process. He received several hearings on his variance application before the zoning board. After the board denied his application in October 2011, he could have challenged that determination through an Article 78 provision, but he elected not to. Once plaintiff learned that the Village would not calendar his "as-of-right" application for a hearing before the architectural review board because (in their view) the proposed construction was prohibited by the covenant, plaintiff could have sought review before the zoning board, or he could have filed an Article 78 petition to compel the architectural review board to hear the case. Plaintiff elected not to seek review in any of these manners, but this does not mean that plaintiff was denied a meaningful opportunity to be heard.

Accordingly, the Court dismisses the procedural due process claim because plaintiff was provided with adequate process as a matter of law. *See Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 345 (E.D.N.Y. 2009) ("An Article 78 proceeding provides the opportunity to review whether a body or officer 'failed to perform a duty enjoined upon it by law' or whether a specific act was 'made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion,' and permits the state court to remedy the violation by ordering a hearing or a return of the unlawfully seized property." (quoting N.Y. C.P.L.R. § 7803) (citing *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 156–57 (2d Cir. 2006))); *see also Pabon v. N.Y.C. Transit Auth.*, 703 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) ("This Court is persuaded that the constitutionally sufficient remedies available to rectify any technical or procedural errors in the Transit Authority's robust grievance process, including resort to an Article 78 appeal proceeding, preclude a due process claim here.").

B. <u>Substantive Due Process</u>

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Instead, the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but

---

[3] To the extent plaintiff argues that he was denied the opportunity to seek review through Article 78 because the defendants coerced him not to file a petition, those allegations fall under plaintiff's First Amendment retaliation claim. *Soundview Assoc. v. Town of Riverhead*, 893 F. Supp. 2d 416, 437 (E.D.N.Y. 2012). With respect to those allegations, plaintiff has failed to state a claim. Plaintiff merely alleges that he did not seek review because he was warned that a previous permit seeker appealed the denial of his application, and spent a great deal of litigation resources only to lose when the Village successfully appealed the Article 78 decision. First, plaintiff does not allege that anything he was told was inaccurate. Second, and more importantly, there is nothing coercive about making an accurate statement about the prospects of success in litigation, and the costs associated with pursuing an appeal.

also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena*, 432 F.3d at 112 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). To satisfy this standard, a plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989).

          a. Valid Property Interest

To meet the first prong of the test for substantive due process violations, plaintiff must show he has a "valid property interest." *Cine SK8 v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)). Defendants challenge whether plaintiff has a protected property interest in a zoning variance. Additionally, defendants assert that plaintiff cannot have a property interest in his "as-of-right" application, because the covenant restricts his legal entitlement to build on his property.

"It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). A plaintiff has a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *RRI Realty Corp. v. Southampton*, 870 F.2d 911, 917 (2d Cir. 1989) (citation and internal quotations omitted). An entitlement to a benefit arises "only when the discretion of the issuing agency is so narrowly circumscribed" as to virtually assure conferral of the benefit. *Id.* at 918. "Where the right asserted is the right to a building permit or a zoning variance, the existence of discretionary action with respect to such applications renders the alleged interest non-protected." *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 672 (E.D.N.Y. 2013) (collecting cases). "The issue of whether an individual has such a property interest is a question of law '[s]ince the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise.'" Gagliardi, 18 F.3d at 192 (citing *RRI Realty Corp.*, 870 F.2d at 918).

Although the defendants focus on plaintiff's zoning application, there are in fact two potential property rights at issue in this case. With respect to plaintiff's zoning variance application, which was denied in October 2011, the question is whether plaintiff had a legally protected property interest in a zoning variance. That question is easily answered in the negative. As plaintiff's complaint makes plain, he was requesting an exception from the local zoning laws, and the zoning board retained the discretion to grant or deny that request. The grant of such a variance was by no means "virtually assured" in these circumstances, because plaintiff was requesting permission to substantially expand his property on land that was heavily restricted by zoning laws (in addition to the covenant that restricted construction on plaintiff's particular parcel). In fact, the previous owners of plaintiff's property requested such a variance, and plaintiff alleges that the variance was only granted on the condition that the property owners agreed to be bound by a restrictive covenant limiting future construction. Thus, plaintiff has not plausibly alleged that he had a protected interest in a possible zoning variance.

However, plaintiff's "as-of-right" application for a building permit presents a closer question. Plaintiff alleges that his application for a building permit in 2012 was asserted "as-of-right," on the theory that his building plans complied with local land use laws. In other words, plaintiff asserts that he did not need permission for a zoning variance (or other land use exemption), because the building plans in his "as-of-right" application were consistent with his legal entitlements according to local land use laws. Defendants do not contest this allegation in their motion. Instead, defendants assert that, even if the building plans would have ordinarily been approved by the Architectural Review Board as compliant with local laws, in plaintiff's case the covenant barred the construction that plaintiff proposed. Put another way, defendants argue that *other* land owners in plaintiff's zoning district might have had a protected interest if they had submitted an identical building plan to the Architectural Review Board, but plaintiff did not, because the covenant, in effect, ceded that right to the Village.

The Court cannot accept defendants' argument without first determining whether the building plan at issue—the one submitted to the Architectural Review Board under an "as-of-right" theory—was barred by the restrictive covenant. Although the terms of the covenant are within the complaint, the contours of plaintiff's building application are not, and the Court cannot resolve this legal question based upon the facts that are within the pleadings. Moreover, plaintiff is not required, at the motion to dismiss stage, to plead the particulars of his building application. For present purposes, it suffices (albeit barely) that plaintiff has alleged that his building plans did not violate the terms of the covenant. For this reason, the Court concludes that defendants have not met their burden of demonstrating that the complaint fails to plead a protected property interest affected by the denial of the as-of-right application.[4] However, for the reasons set forth below, the Court concludes that plaintiff's claim nonetheless fails, because plaintiff has not satisfied the second prong of a substantive due process claim.

b. Infringement of the Property Interest

In order to meet the second prong of a substantive due process claim, plaintiff must show "that defendants infringed on [his] property right in an arbitrary or irrational manner." *Cine SK8*, 507 F.3d at 784. In particular, plaintiffs must show the government's infringement was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)); *see also Harlen Assocs.*, 273 F.3d at 505 ("As we have held numerous times, substantive due process 'does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in

---

[4] For similar reasons, the Court disagrees with defendants' assertion that all of plaintiff's claims relating to the denial of his "as-of-right" application are unripe for review. Defendants argue that the Village's decision is not a final, reviewable government action, because plaintiff was required to seek relief from the covenant by requesting a variance from the zoning board, and he failed to complete this process. (Village Def. Mem. at 14.) This argument is unpersuasive, because, according to the complaint, plaintiff did not need such a variance in order to engage in the proposed construction; he therefore had no need to seek review before the zoning board. Thus, accepting the facts of the complaint as true, the decision to deny the "as-of-right" application is a final, reviewable action.

11

a state court lawsuit. . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999))); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (explaining that plaintiff meets second prong of substantive due process test "only when government acts with no legitimate reason for its decision" (citation and quotation marks omitted)).

"In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (citations and quotation marks omitted); *see also Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'" (quoting *Natale*, 170 F.3d at 263)).

Defendants argue that plaintiffs fail to allege any conduct that could plausibly satisfy this standard. The Court agrees. Because plaintiff does not have a protected interest in his zoning applications, the Court's analysis is limited to plaintiff's "as-of-right" application for a building permit. Under the facts of the complaint, plaintiff has failed to allege a plausible claim that the denial of that application was without any basis. First, there is nothing in the complaint that suggests that the Village's view that the covenant barred the application was entirely unsound. Although that view may or may not have been correct, this Court cannot conclude, based upon the facts alleged in the complaint, that the Village's interpretation was taken in bad faith. *See Brady v. Town of Colchester*, 863 F.2d 205, 215-16 (2d Cir. 1988) (analyzing substantive due process claim in the context of a zoning decision, and noting that a claim would not arise merely because a municipality made a good faith mistake about the applicable law); *Lexjac, LLC v. Inc. Vill. of Muttontown*, No. 07-CV-4614 (JS), 2011 U.S. Dist. LEXIS 28655, at *21 (E.D.N.Y. Mar. 18, 2011) (holding that, even if the Village's view of its legal authority to take the plaintiffs' property was incorrect, a substantive due process claim would not sound if the defendant "wrongly, but in good faith," believed that it had the legal power to take the relevant action), *reversed on other grounds*, 2015 U.S. App. LEXIS 10704, at *7 (2d Cir. June 22, 2015). In reaching this determination, the Court is mindful that in previous litigation, the Appellate Division of New York held that moving trees on the subject property violated the covenant; it would therefore be reasonable to think that erecting buildings on that same property might violate the covenant. Second, to the extent plaintiff claims that the Village's decision was "shocking" because it was unduly influenced by plaintiff's neighbor, Ms. Sweeney, the Court disagrees. There is nothing improper about the Village's consideration of the views of plaintiff's neighbor, who would be most affected by any construction on plaintiff's property.[5]

---

[5] Plaintiff also alleges that he and Ms. Sweeney have had a longstanding dispute over their property line, and that Ms. Sweeney offered to support his various applications (which would, if granted, have affected Ms. Sweeney's property, because the proposed constructions would have placed buildings close to her home) in exchange for plaintiff's concessions

Accepting plaintiff's facts as true and construing them in the light most favorable to plaintiff, the Court concludes that plaintiff has not adequately stated a plausible claim for denial of substantive due process based upon alleged conduct that was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised,'" *Ferran*, 471 F.3d at 369–70. Thus, plaintiff's procedural and substantive due process claims are dismissed.

3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (citations omitted)). In *Prestopnik v. Whelan*, the Second Circuit explained the difference between class-of-one equal protection claims and more traditional equal protection claims:

> The Equal Protection Clause requires that the government treat all similarly situated people alike. While this clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, it may also be used to bring a "class of one" equal protection claim. In a "class of one" case, the plaintiff uses the existence of persons in similar circumstances who received more favorable treatment than the plaintiff to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain.

249 F. App'x 210, 212-13 (2d Cir. 2007) (internal alterations, citations, and quotation marks omitted). Thus, a class-of-one claim requires the plaintiff to prove that he was treated differently from similarly situated individuals. However, "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality—whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments—being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB), 2013 U.S. Dist. LEXIS 46334, at *22 (E.D.N.Y. Mar. 29, 2013).

In order to succeed on a class-of-one claim, a plaintiff "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (citation and internal quotation marks omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). "This requires a showing that the level of similarity between the plaintiff and the person(s) with whom she compares herself is 'extremely high' – so high (1) that 'no rational person could

---

about their property line. The Court does not believe that there is anything inherently improper about two neighbors negotiating over their property rights.

13

regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,' and (2) that 'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Prestopnik*, 249 F. App'x at 213 (quoting *Neilson*, 409 F.3d at 104-05).

"While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (internal quotation omitted). Additionally, "a plaintiff alleging unfair treatment in a zoning/building context must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged." *Sacher*, 967 F. Supp. 2d at 670 (citing *Amid v. Vill. of Old Brookville*, No. 11-3800 (LDW), 2013 U.S. Dist. LEXIS 129447, at *18 (E.D.N.Y. Feb. 7, 2013) (dismissing class-of-one claim arising from building applications, because "[a]bsent is any indication as to the similarity of the location or size of the neighbors' properties, or that the applications of such homeowners were accepted, rejected or in any way similar to Plaintiff's project.")); *Ruston v. Town Bd. Of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of class-of-one claim against zoning decision because the comparators were dissimilar).

Applying this standard here, the Court concludes that plaintiff has not pleaded a class-of-one claim, because he has not passed the threshold hurdle of pleading the existence of a comparator. Although plaintiff asserts that "similarly situated applicants" were treated differently (Compl. ¶¶ 122, 145), this assertion is purely conclusory. Beyond this, plaintiff only mentions one potential comparator in passing: Alan Seewald. (*Id.* ¶ 202.) Plaintiff's allegations with respect to Mr. Seewald do not meet the standard set forth in *Neilson*, because there are no facts that suggest Mr. Seewald is similarly situated, aside from plaintiff's blanket assertion that Seewald was granted variances. Plaintiff offers no facts about Mr. Seewald's property, the nature of his application, whether his land was granted any previous variances, or whether his neighbors objected to his application. *See Filipowski v. Greenwood Lake*, 10-CV-1753 (CS), 2013 U.S. Dist. LEXIS 93695, at *21-22 (S.D.N.Y. July 3, 2013) (dismissing class-of-one claim arising from land use decisions, because plaintiffs failed to allege, with respect to the ten proffered comparators, the particulars of their properties, including the zoning and size of the lot, the character of the neighborhood, and what they were planning to build). Indeed, it would appear that the covenant applicable to plaintiff's property (and the history of zoning variances granted to the previous owners) renders plaintiff's situation wholly distinct from other land owners in his zoning district.

The Court has also considered plaintiff's argument that the Village has enforced its zoning laws against him, but not Ms. Sweeney. To the extent plaintiff argues that the Village has enforced the zoning laws and the covenant against him while turning a blind eye to Ms. Sweeney's alleged zoning violations, these allegations do not give rise to an equal protection claim. Again, the points of comparison plaintiff has identified are too dissimilar to state a claim for relief. Whereas plaintiff claims that Ms. Sweeney's property is too close to his property line,

which violates the local zoning laws, plaintiff's situation is entirely distinct. *See Nemeth v. Vill. of Hancock*, No. 10-CV-1161, 2011 U.S. Dist. LEXIS 1563, at *19 (N.D.N.Y. Jan. 7, 2011) ("The allegation that the Village enforced the fence regulation against Ms. Garcia is not similar to the allegation that the Village failed to prosecute Plaintiffs' complaint that the Kuehn's use of their property 'imposed externalities, including industrial noise and odors . . .'"). Thus, Village's failure to seek enforcement of Ms. Sweeney's alleged property-line violation is not "virtually identical" to plaintiff's denied building applications.

In sum, plaintiff has failed to plead, as he must, that the Village granted virtually identical applications submitted by other persons in comparable zoning districts. For this reason, plaintiff's equal protection claim is dismissed.

4. First Amendment Retaliation

In order to plead a First Amendment retaliation claim, the plaintiff must show that he: "(1) has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

The Court agrees with defendants that plaintiff's allegations do not meet the first prong of a retaliation claim. Plaintiff's claim of retaliation alleges two forms of protected activity. First, plaintiff alleges that his building applications were protected activity, because they were petitions for redress:

> Plaintiffs have a right under both New York Law and the Village Code to petition the government for redress of grievances, to file zoning, use, building, or other applications with the appropriate authorities, and to have all such applications processed and reviewed in accord with applicable laws, code provisions, and standards. Plaintiffs petitioned the government for redress of grievances by filing an application for site plan approval of their As of Right Application.

(Compl. ¶¶ 230-31.) Second, plaintiff alleges that his building applications were denied in retaliation for his "discussions with Defendants" and because he told Village officials that he would not agree to pay the Village's litigation costs from the Comack lawsuit:

> Plaintiffs' discussions with Defendants and their decision made pursuant to same are speech protected by the First Amendment to the U.S. Constitution. Plaintiffs engaged in protected conduct when they declined certain officers' request to compensate the Village for the costs of the Commack litigation.

(*Id.* ¶¶ 238-39.)

Neither of these allegations can plausibly satisfy the first element of a retaliation claim. With respect to plaintiff's building applications, plaintiff does not allege that defendants actually retaliated against him for filing building applications; his claim is simply that his applications were denied. To state the obvious, denying a request for redress is not the same thing as retaliating against the person requesting redress. As defendants note, the Second Circuit has rejected the very same First

15

Amendment theory that plaintiff advances here, because a "site-plan application does not purport to complain to public officials [or] seek administrative [or] judicial relief from their actions." *Ridgeview Partners, LLC v. Entwhistle*, 227 F. Appx. 80, 82 (2d Cir. 2007) (citing *Dougherty v. Town of North Hempstead ZBA*, 282 F.3d 83, 91 (2d Cir. 2002)). Moreover, as the Second Circuit explained in *Ridgeview Partners*, even if such an application could be considered a petition for redress, the refusal to consider or act upon grievances is not conduct that violates the First Amendment. *Id.* (citing *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979)).

For similar reasons, plaintiff's claim that the defendants retaliated against him for refusing to pay legal fees and refusing to cede his property line to his neighbor do not give rise to a First Amendment claim. Even if the Court were to construe both allegations as official requests of plaintiff from state officials, at most plaintiff is alleging that state actors took action against him because he refused the *government's* requests. In this sense, plaintiff's claim is backwards, because he has failed to allege that a state actor has retaliated against him because he *himself* petitioned for redress in some manner.

Accordingly, plaintiff has failed to adequately plead a violation of his First Amendment rights, and plaintiff's claim of retaliation is dismissed.

5. Conspiracy

Defendants next argue that plaintiff has failed to plausibly allege a claim of conspiracy. It is well established that a plausible claim of conspiracy must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Courts have recognized that "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such a right. Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).

Applying that standard here, the Court concludes that plaintiff has failed to plausibly allege a claim of conspiracy. As the Court discussed above, plaintiff has failed to plead facts giving rise to a constitutional claim. It naturally follows that plaintiff has failed to plead a conspiracy claim, because the deprivation of a constitutional right is prerequisite to a claim of conspiracy.

In the absence of a viable constitutional claim, plaintiff's conspiracy claims must be, and are, dismissed.

In sum, the Court has determined that plaintiff has failed to plead a viable cause of action under Section 1983. For this reason, the Court need not reach defendants' remaining arguments for dismissal of plaintiff's federal claims.

B. State Law Claims

The defendants also seek dismissal of plaintiff's state law claims. However, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit*

*Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, declines to exercise supplemental jurisdiction over any remaining state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over plaintiff's remaining state law claims, and dismisses these claims without prejudice.

### C. Leave to Amend

Having concluded that plaintiff has failed to state a plausible claim under Section 1983, the Court has considered whether he should be afforded an opportunity to amend his complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires."

Here, plaintiff's procedural due process claim fails on the merits. Moreover, plaintiff's claims arising from events before April 16, 2011 are time-barred. Better pleading would not cure the defects in these claims, and leave to amend these claims is therefore denied. *See, e.g.*, *Cuoco*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."). However, the remainder of plaintiff's claims have been dismissed based upon pleading defects, and it is possible that plaintiff may be able to cure these defects by amending his complaint to include additional facts. Accordingly, the Court grants plaintiff leave to amend his complaint to address the pleading deficiencies identified by the Court with respect to his substantive due process, equal protection, and First Amendment retaliation claims. To the extent plaintiff amends his federal claims, he may re-assert any pendent state law claims.

### IV. CONCLUSION

For the reasons set forth herein, the Court grants the defendants' motions and dismisses the complaint. Plaintiff's federal claims are dismissed with leave to amend, consistent with this opinion. The Court declines to exercise supplemental jurisdiction over any state law claims at this juncture and, in its discretion, dismisses those claims without prejudice. If plaintiff intends to attempt to cure the pleading defects in his federal claims, he may file an amended complaint within thirty days. If

plaintiff fails to file an amended complaint, the Court will close the case, but plaintiff will retain the ability to attempt to pursue any state claims in state court.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 28, 2015
    Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*. The Village Defendants are represented by Anthony F. Cardoso, Steven C. Stern, and Mark A. Radi of Sokoloff Stern, 179 Westbury Avenue, Carle Place, New York, 11514. Defendant Laura Sweeney Chuba is represented by Carl F. Sandel and Drew William Sumner of Morris Duffy Alonso & Faley, Two Rector Street, New York, New York, 10006.