UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————

№ 14-CV-2889 (JFB)(AKT)

—————————

ROBERT GREGORY,

Plaintiff,

VERSUS

INCORPORATED VILLAGE OF CENTRE ISLAND; BOARD OF ZONING APPEALS OF
THE INCORPORATED VILLAGE OF CENTRE ISLAND; LAWRENCE SCHMIDLAPP,
INDIVIDUALLY AND AS DEPUTY MAYOR OF THE INCORPORATED VILLAGE OF
CENTRE ISLAND; LAURA SWEENEY CHUBA, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF CENTRE ISLAND; AND THE BOARD OF TRUSTEES
OF THE INCORPORATED VILLAGE OF CENTRE ISLAND,

Defendants.

—————————

**MEMORANDUM AND ORDER**
July 27, 2016

—————————

JOSEPH F. BIANCO, District Judge:

This action arises from plaintiff Robert Gregory's efforts to build upon his property, which is governed by a restrictive covenant that protects his neighbors' views of Oyster Bay. Plaintiff brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York law against the Incorporated Village of Centre Island ("the Village"), the Village's Board of Zoning Appeals, Deputy Mayor Lawrence Schmidlapp ("Schmidlapp"), the Village's Board of Trustees (collectively, "the Village defendants"), and Laura Sweeney Chuba ("Chuba"), plaintiff's neighbor and a member of the Village's Board of Trustees. The gravamen of plaintiff's complaint is that the defendants have purposefully frustrated his efforts to seek zoning variances and building permits.

The Village defendants and Chuba previously filed separate motions to dismiss, which the Court granted in an August 28, 2015 Memorandum and Order. *See Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889 (JFB) (AKT), 2015 WL 5093623 (E.D.N.Y. Aug. 28, 2015). However, plaintiff was granted leave to file an amended complaint "to address the pleading deficiencies identified by the Court with respect to his substantive due process, equal protection, and First Amendment retaliation claims." *Id.* at *16. Plaintiff filed an amended complaint,

and presently before the Court are separate motions to dismiss filed by Chuba and the Village defendants. For the reasons set forth below, the Court grants defendants' motions and dismisses the case. In sum, the federal claims are dismissed because, although plaintiff has supplemented his original complaint with additional allegations, he still fails to state plausible claims. Given the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and remands them to state court.

I. BACKGROUND

The underlying allegations giving rise to this litigation are comprehensively described in the Court's August 28, 2015 Memorandum and Order granting defendants' motions to dismiss plaintiff's initial complaint. *See Gregory*, 2015 WL 5093623, at *1-3. Thus, the Court assumes the parties' familiarity with the prior allegations of this case and briefly summarizes the additional allegations in the amended complaint.

A. Amended Complaint

The following facts are taken from the amended complaint, and are not findings of fact by the Court. Instead, the Court will assume these facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

In his amended complaint, there were four major areas that plaintiff sought to supplement in order to address the Court's August 28, 2015 Memorandum and Order.

With respect to plaintiff's substantive due process claim, plaintiff has added claims that defendants "intentionally and systematically harassed and discriminated against Plaintiff by denying variance/building permits, bringing criminal charges against Plaintiff for nonexistent violations, and bringing Plaintiff to trial without probable cause on a criminal complaint that is baseless." (Am. Compl. ¶ 151.) Plaintiff claims that defendants' denial of plaintiff's applications were motivated by bad faith and a "gross abuse of governmental authority." (*Id.* at ¶ 152.) Plaintiff alleges that he "accepted the opportunity to reopen the application [for a variance] and limit its size and scope in the interest of expediency due to Mrs. Gregory's health." (*Id.* at ¶ 154.) Plaintiff further alleges that when the reopened hearing began, "the Chuba contingent was as vociferous as ever" and because the Zoning Board of Appeals ("ZBA") was not an option, he "had no choice but to produce an As of Right application and worked with the building inspector to do so." (*Id.*)

Plaintiff alleges that for an "as-of-right" application that requires a variance to be approved, "it is first rejected by the building inspector then sent to the ZBA for an appeal and to see if other members of the community in similar situations have been granted variances from the rules that caused the rejection." (*Id.* at ¶ 137.) Plaintiff alleges that in his case, "the building inspector participated in the drafting process to achieve what he and Plaintiff's architect believed to be a structure that not only did not violate any zoning ordinance but could not under any reasonable interpretation have the Comack Covenant be applied to it." (*Id.*) According to plaintiff, the Village building inspector, Joe Richardson ("Richardson"), sent the application to Stanley Chase ("Chase") of the Board of Architectural Review ("ARB") and expected it to be calendared for the next hearing date; when it was not, Richardson shared that Chase "heard that the trustees were not going to allow the application so he didn't see the

2

point in putting it on." (*Id.*) Plaintiff alleges that Attorney Ritter was instructed to review the application to determine if the Comack Covenant could be applied to the north side of the house, opposite Chuba's property. (*Id.*) Plaintiff alleges that Richardson "was shocked that the Trustees were asking for an interpretation that would allow them not to send the application along to the ARB, and merely forwarded Ritter's email to [plaintiff] without any comment other than a simple 'FYI.'" (*Id.*) Plaintiff alleges that he never received a formal rejection that he could take to the ZBA. (*Id.*)

With respect to plaintiff's equal protection claim, plaintiff has attempted to supplement his claim with respect to a comparator, Alan Seewald ("Seewald"). Plaintiff claims that Seewald "was granted far greater variances in every respect despite being almost identically situated geographically." (*Id.* at ¶ 181A.) Specifically, plaintiff alleges that the "Seewald buffer was an unpaid extension of private road that served as his neighbors' easement to the north" and that plaintiff's property similarly "has an unpaved extension of the communities' road that leads to the water as well as over 300 feet of water company land that cannot be built upon and serves as the communities' egress to the beach." (*Id.*) Plaintiff claims that "[t]he only differences in between the two is that Seewald had a cooperative neighbor in Mr. Friedlander to make acceptable plantings that serve as a proper buffer between the homes" whereas his neighbor, Chuba, is not cooperative. (*Id.*) Plaintiff also alleges that the covenant is unenforceable because the Commack litigation was settled so that the state court never decided the "true legal meaning on the Covenant's language and provisions." (*Id.* at ¶ 125.) Plaintiff further alleges that the covenant was "never mentioned in the Zoning Board's October[] 2011 denial of Plaintiff's earlier application." (*Id.*)

With respect to plaintiff's First Amendment retaliation claim, plaintiff claims that "[i]n retaliation for airing his grievances, and exposing Defendants' illegal conduct and schemes to the community at large, Defendants denied Plaintiff's applications and pursued frivolous criminal actions." (*Id.* at ¶ 198; *see also id.* at ¶ 131.) Plaintiff alleges that he "petitioned the government for redress of grievances by filing an application for site plan approval of the As of Right Application." (*Id.* at ¶ 199.) Plaintiff further alleges that a new street parking law was passed on May 22, 2014, which was directed at him, and that a new trailer law was passed in January 2015 and enforced only against him. (*Id.*)

With respect to plaintiff's conspiracy claim, he claims that "all of the Defendants' interests are inextricably intertwined." (*Id.* at ¶ 230.) Specifically, plaintiff alleges that Chuba "illegally and improperly" sent emails to her fellow Trustees to get plaintiff's continuation hearing with the ZBA postponed, causing at least one trustee to request to be removed from the email chain. (*Id.* at ¶¶ 87, 89.) Plaintiff further alleges that this trustee resigned "as a result of this improper email exchange, after the filing of Plaintiff's lawsuit" due to "concern for the legal implications of the Trustees' actions." (*Id.*) Plaintiff alleges that the trustee who resigned advised plaintiff that Chuba and Schmidlapp "colluded with other trustees (who are trying to pass a referendum relating to residences who previously thought themselves well within the A1 3 acre zoned parameters but find that they like Plaintiff are reduced by generically defined high water mark calculations) to injure Plaintiff." (*Id.* at ¶ 230.) Plaintiff claims that the trustee who resigned was replaced by Michael Chalos, an attorney

3

"who has been advising Chuba regarding her matters in exchange for the Schmidlapps' and Chuba's cooperation with the referendum-seeking Trustees." (*Id.*) Plaintiff claims that the defendants "have created an elite group that has the collective power to favor their own friends and relatives while simultaneously and maliciously disadvantaging those outside such fortuitous familial and social circles." (*Id.*)

B. Procedural History

On May 7, 2014, defendants filed a notice of removal of the case. On September 29, 2014, defendants filed their motions to dismiss the initial complaint, which the Court granted on August 28, 2015. Plaintiff filed an amended complaint on September 25, 2015. Defendants filed their motions to dismiss the amended complaint on November 11, 2015. Plaintiff filed his oppositions on December 9, 2015. Defendants filed their replies on December 23, 2015.

This matter is fully submitted, and the Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005);

*see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Ct. Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

### III. DISCUSSION

Plaintiff brings three claims pursuant to 42 U.S.C. § 1983 ("Section 1983"): (1) a substantive due process claim under the Fourteenth Amendment; (2) an equal protection claim under the Fourteenth Amendment; and (3) a claim of retaliation under the First Amendment. Plaintiff also alleges that the defendants violated his constitutional rights as part of a conspiracy, and alleges state law claims based on tort and defamation/slander.

Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). For the reasons set forth below, the Court concludes that plaintiff has failed to state a cognizable claim under Section 1983 under any of the three constitutional theories he has asserted. Therefore, in the absence of any constitutional claim, plaintiff's claim that the defendants conspired to violate his constitutional rights fails as a matter of law. Having determined that plaintiff has failed to plead a federal cause of action, the Court declines to retain jurisdiction over plaintiff's claims under state law.

A. Federal Claims

1. Substantive Due Process

In the Court's August 28, 2015 Memorandum and Order, defendants' motion to dismiss plaintiff's substantive due process claim was granted, with leave to amend. The Court found that, as to the first prong of the test for a substantive due process violation – demonstrating a valid property interest – plaintiff could not plausibly allege a protected interest in a possible zoning variance; however, as to plaintiff's "as-of-right" application for a building permit, the Court could not resolve the legal question as to whether plaintiff's building plan submitted to the Architectural Review Board was barred by the restrictive covenant based upon the facts in the pleadings. *Gregory*, 2015 WL 5093623, at *10. However, the Court ultimately

concluded that "plaintiff's claim nonetheless fails, because plaintiff has not satisfied the second prong of a substantive due process claim" – an infringement of his property interest in an arbitrary or irrational manner. *Id.*

Defendants argue that plaintiff has failed to amend his complaint so as to allege that the denial of his "as-of-right" application was arbitrary, irrational, or otherwise motivated by bad faith. Plaintiff claims that the denial of his "as-of-right" application was arbitrary and capricious because his architect and the Village building inspector, Joe Richardson, believed that the proposed construction did not violate the covenant. However, for the reasons explained below, the Court agrees with defendants that plaintiff's claims that he consulted with a Village building inspector fail to transform his allegations into a cognizable substantive due process claim.

a. Infringement of Plaintiff's Property Interest

Because the Court previously held that plaintiff had plausibly alleged (albeit barely) that his building plans did not violate the terms of the covenant, the Court focuses on whether plaintiff's amended complaint states a plausible claim under the second prong of a substantive due process claim.[1]

As the Court articulated in its prior Memorandum and Order, "[i]n order to meet the second prong of a substantive due process claim, plaintiff must show 'that defendants infringed on [his] property right in an arbitrary or irrational manner.'" *Gregory*, 2015 WL 5093623, at *11 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)). "In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (citations and internal quotation marks omitted); *see also Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999))).

The Court agrees with defendants that plaintiff again fails to allege any conduct that could plausibly satisfy this standard. The additional allegations included in plaintiff's amended complaint fail to suggest that the Village's view that the covenant barred plaintiff's application was entirely unsound or taken in bad faith. *See Brady v. Town of Colchester*, 863 F.2d 205, 215-16 (2d Cir. 1988) (noting in the context of a zoning decision that a substantive due process claim would not arise merely because a municipality made a good faith mistake about the applicable law); *Lexjac, LLC v. Inc. Vill. of Muttontown*, No. 07-CV-4614 (JS), 2011 WL 1059122, at *7 (E.D.N.Y. Mar. 18, 2011) (holding that, even if the Village's view of its legal authority to take the plaintiffs' property was

---

[1] Additionally, because the Court previously held that plaintiff clearly did not have a legally protected property interest in a zoning variance, the Court only addresses whether plaintiff has a legally protected property interest in his "as-of-right" application for a building permit. *See Gregory*, 2015 WL 5093623, at *10.

6

incorrect, a substantive due process claim would not arise if the defendant "wrongly, but in good faith," believed that it had the legal power to take the relevant action). As previously stated in the Court's August 28, 2015 Memorandum and Order, "the Appellate Division of New York held that moving trees on the subject property violated the covenant; it would therefore be reasonable to think that erecting buildings on that same property might violate the covenant." *Gregory*, 2015 WL 5093623, at *11.[2]

Although plaintiff newly argues that the denial of his "as-of-right" application was arbitrary and capricious because his architect and the Village building inspector, Joe Richardson, believed that the proposed construction did not violate the covenant, there is no authority to suggest that rejection of an application prepared in consultation with a municipality's building inspector violates plaintiff's substantive due process rights. The covenant explicitly states that "[t]he within conditions may not be amended, annulled, altered or repealed without the approval of the Board of Zoning Appeals of the Village of Centre Island after a public hearing." (*See* Covenant, Ex. B to Village Mot.) The only reference in the covenant to any enforcement responsibilities by a Village building inspector is that "[a]ny shrubs or plants which if allowed to grow to maturity would exceed three feet in height will require the approval of the village building inspector for compliance with the intent of this declaration." (*Id.*) Notably absent from the covenant is any indication that a Village building inspector has any authority to alter the covenant or determine its application with respect to the construction of a building or structure, which are explicitly banned by the second clause of the covenant. (*See id.* ("No permanent buildings or structures of any kind shall be built on lots numbered 85 and 86.").) Thus, because plaintiff has not established any basis for relying on Richardson's opinions, he certainly has not alleged the type of conduct necessary to state a substantive due process claim.

Further, to the extent that plaintiff continues to assert that the Village's decision was "shocking" because it was unduly influenced by plaintiff's neighbor, Chuba, the Court disagrees and again finds that "[t]here is nothing improper about the Village's consideration of the views of plaintiff's neighbor, who would be most affected by any construction on plaintiff's property." *Gregory*, 2015 WL 5093623, at *11.

In sum, accepting plaintiff's facts as true and construing them in the light most favorable to plaintiff, the Court concludes that plaintiff has not adequately stated a plausible claim for denial of substantive due process, and thus, plaintiff's substantive due process claims are dismissed.

2. Equal Protection

In the August 28, 2015 Memorandum and Order, the Court granted defendants' motion to dismiss plaintiff's equal protection claim, but granted plaintiff leave to amend. The Court found that plaintiff failed to plead a class-of-one claim because he "ha[d] not passed the threshold hurdle of pleading the existence of a comparator." *Gregory*, 2015 WL 5093623, at *13.

---

[2] Although plaintiff alleges that the Village is estopped from relying on the covenant with respect to his "as-of-right" application because it was not mentioned in the Zoning Board's denial of his request (Am. Compl. at ¶¶ 94, 125), plaintiff also clearly indicates that the covenant was mentioned at nearly every hearing or discussion on the matter. (*Id.* at ¶ 94.) Thus, the Court finds that this argument is without merit.

Although plaintiff asserted that similarly situated applicants were treated differently, his assertions were conclusory and he failed to plead "that the Village granted virtually identical applications submitted by other persons in comparable zoning districts." *Id.* at \*14. For the reasons described below, although plaintiff has amended his complaint to include some additional allegations regarding a comparator property owned by Seewald, the Court concludes that he still fails to adequately state a class-of-one claim.

In order to adequately state a class-of-one claim equal protection claim, a plaintiff "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (citation and internal quotation marks omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). "This requires a showing that the level of similarity between the plaintiff and the person(s) with whom she compares herself is 'extremely high' – so high (1) that 'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,' and (2) that 'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Prestopnik v. Whelan*, 249 F. App'x 210, 213 (2d Cir. 2007) (quoting *Neilson*, 409 F.3d at 104-05). Further, "a plaintiff alleging unfair treatment in a zoning/building context must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged." *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 670 (E.D.N.Y. 2013) (citing *Amid v. Vill. of Old Brookville*, No. 11-3800 (LDW), 2013 WL 527772, at \*6 (E.D.N.Y. Feb. 7, 2013) (dismissing class-of-one claim arising from building applications, because "[a]bsent is any indication as to the similarity of the location or size of the neighbors' properties, or that the applications of such homeowners were accepted, rejected or in any way similar to Plaintiff's project")); *see also Ruston v. Town Bd. Of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of class-of-one claim against zoning decision because the comparators were dissimilar); *In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at \*7-9 (S.D.N.Y. Mar. 25, 2016) (finding that plaintiff failed to allege sufficient similarity where comparator examples were of a similar character and size but were located in a different zoning district with different regulations).

Applying this standard here, the Court concludes that, although plaintiff has added some additional allegations in his amended complaint regarding Seewald, he has still failed to plead the existence of a comparator, and thus, has failed to plead a class-of-one claim. Plaintiff alleges that Seewald "was granted far greater variances in every respect despite being almost identically situated geographically." (*Id.* at ¶ 181A.) However, plaintiff's own allegations make clear that Seewald was not in fact identically situated. Specifically, plaintiff alleges that the "Seewald buffer was an unpaid extension of private road that served as his neighbors' easement to the north" and that plaintiff's property "has an unpaved extension of the communities' road that leads to the water as well as over 300 feet of water company land that cannot be built upon and serves as the communities' egress to the beach." (*Id.*) Plaintiff claims that "[t]he only differences in between the two is that Seewald had a

cooperative neighbor in Mr. Friedlander to make acceptable plantings that serve as a proper buffer between the homes" whereas his neighbor, Chuba, is not cooperative. (*Id.*) However, the fact that Seewald had a cooperative neighbor whereas plaintiff did not clearly indicates that the properties were not "*prima facie* identical in all relevant respects." *Neilson*, 409 F.3d at 104. *Cf. Sacher*, 967 F. Supp. 2d at 671 (permitting claim to go forward because plaintiffs alleged the "existence of properties containing the same type of structure for which they were denied a variance" but noting that "important to any finding of similarity will be establishing whether neighbors adjacent to the properties named objected to the allegedly similar structures at a public hearing in the same way as the [plaintiffs'] next-door neighbor. Certainly, a neighbor's protest regarding the obstruction of his particular view by an illegal second story addition will distinguish Plaintiffs' case from others, and militate against a finding of the level of similarity required to establish an equal protection claim."). Further, the Court notes that, under New York law, one of the factors that a zoning board of appeals is to take into account when determining whether to grant a variance is "whether an undesirable change will be produced in the character of the neighborhood or a determent to nearby properties will be created by the granting of the area variance." N.Y. Village Law § 7-712-b(3)(b). Thus, the Court concludes that plaintiff has not alleged an adequate comparator in Seewald.[3]

---

[3] Further, to the extent that plaintiff points to the Comacks as an alternate comparator, plaintiff fails to allege any facts from which the Court could conclude that the Comacks were similarly situated to plaintiff. Although the Comacks owned the property before plaintiff, there is no indication that they sought similar variances to the ones sought by plaintiff.

In sum, accepting plaintiff's facts as true and construing them in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to plead that the Village granted virtually identical

---

Plaintiff merely alleges that the Comacks' "north trees continued to violate the Covenant before and after settling with the Village" but no official action was taken to enforce the Covenant, and that "[t]he distinctions drawn by the Village between Plaintiff and the Comacks regarding alleged Covenant violations were arbitrary and capricious." (Am. Compl. at ¶¶ 184-85.) As an initial matter, the Village *did* take action against the Comacks by filing an action in Nassau County Supreme Court alleging the Comacks violated the terms of the covenant by planting shrubs and trees on the property. (*Id.* at ¶ 47.) The fact that the Village ultimately reached a settlement with the Comacks and did not require the trees to be removed does not change the fact that action was taken to enforce the covenant. To the extent that plaintiff challenges the Village's granting of a variance to the Comacks in 1999 in order to build a second story addition and change the roof line, the covenant was not in place at that time, and in fact, the granting of that variance is what resulted in the covenant. *See Inc. Vill. of Ctr. Island v. Comack*, 834 N.Y.S.2d 288, 289 (N.Y. App. Div. 2007). Thus, the variances sought by the Comacks were not "virtually identical" to those sought by plaintiff.

To the extent that plaintiff attempts to point to Chuba as a potential comparator, (*see* Am. Compl. ¶ 128 ("An example of another residential property in the Village containing known yet unaddressed violations includes . . . the situate of Defendant Chuba's property, a mere four inches from Plaintiff's property line, which is in violation of the fire code.")), the Court again finds that plaintiff's situation is "entirely distinct." *Gregory*, 2015 WL 5093623, at *13 (citing *Nemeth v. Vill. of Hancock*, No. 10-CV-1161, 2011 WL 56063, at *6 (N.D.N.Y. Jan. 7, 2011) ("The allegation that the Village enforced the fence regulation against Ms. Garcia is not similar to the allegation that the Village failed to prosecute Plaintiffs' complaint that the Kuehn's use of their property 'imposed externalities, including industrial noise and odors. . . .'").) Thus, the Court again concludes that the Village's failure to address Chuba's property line violation is not an adequate comparator to plaintiff's denied building applications.

9

applications submitted by other persons in comparable zoning districts. Thus, plaintiff's equal protection claim is dismissed.

3. First Amendment Retaliation

In the August 28, 2015 Memorandum and Order, the Court granted defendants' motion to dismiss plaintiff's First Amendment retaliation claim, but granted leave to amend. The Court found that plaintiff's allegations that he participated in protected activity failed to plausibly satisfy the first element of a retaliation claim. *Gregory*, 2015 WL 5093623, at *14. Specifically, the Court found that "[w]ith respect to plaintiff's building applications, plaintiff does not allege that defendants actually retaliated against him for filing building applications; his claim is simply that his applications were denied. To state the obvious, denying a request for redress is not the same thing as retaliating against the person requesting redress." *Id.* With respect to plaintiff's claim that the defendants retaliated against him for refusing to pay legal fees and refusing to cede his property line to Chuba, the Court found that "[e]ven if the Court were to construe both allegations as official requests of plaintiff from state officials, at most plaintiff is alleging that state actors took action against him because he refused the *government's* requests. In this sense, plaintiff's claim is backwards, because he has failed to allege that a state actor has retaliated against him because he *himself* petitioned for redress in some manner." *Id.* at *15. For the reasons described below, the Court concludes that plaintiff has again failed to state a claim for First Amendment retaliation.

To plead a First Amendment retaliation claim, a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

Although plaintiff has amended his complaint, the Court finds that he still fails to allege any protected speech. Plaintiff again alleges that the denial of his building applications constitutes the basis of his First Amendment claims. However, as the Court clearly stated in its earlier Memorandum and Order, "denying a request for redress is not the same thing as retaliating against the person requesting redress." *Gregory*, 2015 WL 5093623, at *14. As the Second Circuit made clear in *Ridgeview Partners, LLC v. Entwhistle*, a claim that defendants have refused to consider a site-plan application does not constitute a First Amendment violation because a "site-plan application does not purport 'to complain to public officials [or] seek administrative [or] judicial relief from their actions.'" 227 F. App'x 80, 82 (2d Cir. 2007) (quoting *Dougherty v. Town of North Hempstead ZBA*, 282 F.3d 83, 91 (2d Cir. 2002)) (alteration in original); *see also Old St. George's LLC v. Bianco*, No. 08-CV-5321 (SCR)(LMS), 2009 WL 8668386, at *5 (S.D.N.Y. May 8, 2009) (finding plaintiffs' application to have their winery included in county's agricultural district was "not conduct protected by the First Amendment right to petition government for redress of grievances"), *aff'd*, 389 F. App'x 33 (2d Cir. 2010); *Sherman v. Town of Chester*, No. 12-CV-647 (ER), 2015 WL 1473430, at *7 n.12 (S.D.N.Y. Mar. 31, 2015) ("The Court does not construe [plaintiff's] subdivision application, nor his subsequent revised applications, to be 'petitions' for First Amendment purposes."). Further, "even if such an application could be considered a petition for redress, the refusal to consider or

act upon grievances is not conduct that violates the First Amendment." *Gregory*, 2015 WL 5093623, at *14 (citing *Ridgeview Partners, LLC*, 227 F. App'x at 82); *see also In the Matter of the Application of Hampshire Recreation, LLC*, 2016 WL 1181727, at *10 ("'[T]he First Amendment does not impose any affirmative obligation on the government to listen [or] to respond' to the exercise of activity protected under the First Amendment. . . . As a result, Defendants were 'free' to, in their discretion, 'ignore' the requests for rezoning." (quoting *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465-66 (1979))). Therefore, the Court again concludes that plaintiff fails to state a First Amendment claim based on the denial of his building applications.

Plaintiff's amended complaint newly alleges that the Village passed a new street parking law on May 22, 2014, which was directed at him, and a new trailer law in January 2015, which was enforced only against him. (Am. Compl. at ¶ 199.) However, plaintiff seems to attribute the passage of these laws to the same conduct – requesting a building permit and variance – that the Court has found does not constitute protected speech. Thus, plaintiff's claims that these laws were enacted in retaliation for filing his "as-of-right" application also fail to state a claim. Further, to the extent that plaintiff claims that he has stated a retaliation claim based on allegations that "[i]n retaliation for airing his grievances, and exposing Defendants' illegal conduct and schemes to the community at large, Defendants denied Plaintiff's applications and pursued frivolous criminal actions," (Am. Compl. at ¶ 198; *see also id.* at ¶ 131; Pl.'s Opp'n at 10), such claims are conclusory and fail to indicate any conduct by plaintiff other than that which the Court has previously found does not constitute protected speech.

Additionally, to the extent that plaintiff continues to assert that defendants retaliated against him for refusing to pay legal fees and refusing to cede property to Chuba, the Court again finds that such allegations fail to constitute a First Amendment claim. *See Gregory*, 2015 WL 5093623, at *15 ("Even if the Court were to construe both allegations as official requests of plaintiff from state officials, at most plaintiff is alleging that state actors took action against him because he refused the *government's* requests. In this sense, plaintiff's claim is backwards, because he has failed to allege that a state actor has retaliated against him because he *himself* petitioned for redress in some manner.").[4]

Accordingly, accepting plaintiff's facts as true and construing them in the light most favorable to him, the Court concludes that plaintiff has failed to adequately plead a violation of his First Amendment rights and dismisses plaintiff's claim of retaliation.

4. Conspiracy

In the Court's prior Memorandum and Opinion, plaintiff's conspiracy claims were also dismissed because "plaintiff [] failed to plead facts giving rise to a constitutional claim" and thus, "failed to plead a conspiracy claim, because the deprivation of a constitutional right is a prerequisite to a

---

[4] Further, to the extent that plaintiff claims that his prosecution for illegally removing trees was retaliatory, the Court previously held that "because plaintiff has not demonstrated that his conviction has been vacated . . . he is barred from challenging the propriety of his prosecution." *Gregory*, 2015 WL 5093623, at *5 n.2 (citing *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014)).

claim of conspiracy." *Gregory*, 2015 WL 5093623, at *15.

It is well established that a plausible claim of conspiracy must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Courts have recognized that "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such a right. . . . Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (internal citation omitted).

Because plaintiff has failed to adequately plead a constitutional claim, for the reasons discussed *supra*, he has also failed to plead a conspiracy claim. Thus, plaintiff's conspiracy claims must also be dismissed.[5]

### B. State Law Claims

The defendants also seek dismissal of plaintiff's state law claims. However, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, declines to exercise supplemental jurisdiction over any remaining state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over plaintiff's remaining state law claims. Because the case was removed from state court, dismissal of the state claims without prejudice is not warranted; rather, the state claims are remanded to state court. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003) ("Because this case was commenced in state court, the district court should remand the action to the state court in which it was originally filed." (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988))).

---

[5] Because the Court has determined that plaintiff has failed to plead a viable cause of action under Section 1983, it need not, and does not, reach defendants' remaining arguments for dismissal of plaintiff's claims, such as immunity.

C. Leave to Amend

Although no request to replead was made by plaintiff, the Court has also considered whether plaintiff should be given an opportunity to replead.

The Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). The Court concludes that an additional attempt to replead plaintiff's federal law claims would be futile. As discussed in detail *supra*, it is clear from plaintiff's amended complaint (as well as his opposition) that he would not be able to assert plausible federal law claims. *See, e.g.*, *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (finding dismissal with prejudice appropriate where the plaintiff received notice of deficiencies in complaint at time of first amendment, and, therefore, was not entitled to a "third go-around"); *Treppel v. Biovail Corp.*, No. 03-CV-3002 (PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (dismissing an action without leave to replead where "plaintiff ha[d] already had two bites at the apple and they have proven fruitless"); *Neal v. Martinez*, No. 01-CV-11587 (VM), 2003 WL 260524, at *4 (S.D.N.Y. Feb. 5, 2003) ("In the instant case, the Court is not persuaded that Plaintiffs would be able to amend the Complaint in a manner which would survive dismissal, and consequently, any opportunity to replead is rightfully denied."); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002) ("Because the Court has previously granted the Plaintiffs opportunity to replead and they have failed to cure the deficiencies found in the Original Complaint, the Amended Complaint is dismissed with prejudice."); *Faulkner v. Verizon Comm'ns, Inc.*, 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002) ("Because plaintiffs have not requested leave to amend, and because this Court has already allowed plaintiffs an opportunity to replead, the Amended Complaint is dismissed with prejudice."); *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) (dismissing action "without leave to replead" where plaintiff failed in his "second effort to state a claim"), *aff'd sub nom. Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survival dismissal, opportunity to replead is rightfully denied"). Here, as noted *supra*, plaintiff has failed twice to present a viable federal law claim. Thus, even according plaintiff the "substantial leeway" afforded to *pro se* litigants, *Gomes v. Avco Corp.*, 964 F.2d 1330, 1336 (2d Cir. 1992), the Court finds that dismissing plaintiff's federal law claims with prejudice is appropriate where plaintiff has again failed to allege a viable federal law claim. Any additional attempts to replead would be futile.

IV. CONCLUSION

For the reasons set forth herein, the Court grants the defendants' motions to dismiss plaintiff's federal claims. In its discretion, the Court declines to exercise

supplemental jurisdiction over any state law claims at this juncture and, given that this is a removal action, the state claims are remanded to the Supreme Court of the State of New York, County of Nassau. The Clerk of the Court shall close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 27, 2016
 Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*. The Village Defendants are represented by Anthony F. Cardoso, Steven C. Stern, and Mark A. Radi of Sokoloff Stern LLP, 179 Westbury Avenue, Carle Place, New York, 11514. Defendant Laura Sweeney Chuba is represented by Carl S. Sandel and Drew William Sumner of Morris Duffy Alonso & Faley, Two Rector Street, New York, New York, 10006.